IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JEFFERY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-012 |
| | ) | |
| EVAN JOSEPH, Warden; JOYCE M. WATTS, | ) | |
| Counselor; and LYNETTE SIMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Richmond County Correctional Institution ("RCCI") in Augusta, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. After Plaintiff originally submitted a one-page complaint with a bare minimum of factual details concerning his allegations that his constitutional rights were violated, the Court directed Plaintiff to submit his claims on the standard complaint form used by incarcerated litigants in the Southern District of Georgia. (See doc. nos. 1, 7.) Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I. SCREENING OF THE AMENDED COMPLAINT

### A. BACKGROUND

Plaintiff is a prisoner of the Georgia Department of Corrections ("DOC") assigned to RCCI, and he names the following Defendants in his amended complaint: (1) Evan Joseph, the warden at RCCI; (2) Joyce M. Watts, a counselor at RCCI; and (3) Lynette Simpson, an official

with the DOC.[1]  (Doc. no. 8, pp. 1, 4.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff filed a federal lawsuit in the Middle District of Georgia in the Fall of 2014, and after filing that lawsuit, he was denied the opportunity to participate in a "Parole Work Release Program."  (Id. at 7.)  Defendants provided "false statements and false information," the specifics of which Plaintiff does not disclose, that resulted in the DOC denying him parole.  (Id. at 6, 7.)  Plaintiff seeks immediate transfer to a work release program, as well as compensatory, punitive, and nominal damages, to include recovery of the wages he should have started earning in a work release program in November of 2014.  (Id. at 10.)  As to the grievance procedure, Plaintiff states that he filed a grievance and an appeal, but after sixty days, there had still been no response to his appeal.  (Id. at 3-4.)

**B.    DISCUSSION**

Plaintiff's amended complaint should be dismissed because of his failure to exhaust administrative remedies.  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies.  See Jones v. Bock, 549 U.S. 199, 215 (2007); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011);

---

[1] The Court **DIRECTS** the **CLERK** to update the docket in accordance with the caption on this document to reflect there is only one Defendant Watts.

Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008); Clark v. Georgia Pardons and Paroles Bd., 915 F.2d 636, 640-41 (11th Cir. 1990). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[2] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the

---

[2]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the DOC's Standard Operating Procedure ("SOP") IIB05-0001. This SOP applies to "[a]ll offenders committed to the Department of Corrections in state prisons, private prisons, county correctional institutions, and transitional centers." SOP IIB05-0001 § II. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. Id. § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

Here, in his amended complaint signed on March 3, 2015, Plaintiff states that he filed a grievance and an appeal. (Doc. no. 8, pp. 3-4.) The grievance was denied, but as to the appeal, there was "still no answer after 60 days." (Id. at 3.) The SOP allows for 100 calendar days from the time of receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(E)(7). Plaintiff concedes that at the time he submitted his amended complaint, only sixty days had passed since the submission of his appeal. Moreover, at the time Plaintiff signed the one-page complaint that he submitted to commence this case, January 26, 2015, the appeal period would have been only in its earliest stages. (See doc. no. 1, p. 2.)

In sum, to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's amended complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case. (Doc. no. 8, p. 3.) Therefore, the amended complaint fails to state a claim upon which relief can be granted. See

Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

## II. CONCLUSION

For the reasons set forth above, Plaintiff's amended complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that the amended complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of April, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA